IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ILLINOIS CENTRAL RAILROAD COMPANY,

    Plaintiff,

v.                                          CIVIL ACTION NO.: 2:22-cv-2445

CITY OF MEMPHIS, TENNESSEE, AND
ZELLNER CONSTRUCTION, LLC

    Defendants.

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Plaintiff Illinois Central Railroad Company ("Illinois Central"), by and through counsel, and files this Complaint for Injunctive Relief and Damages against the Defendant City of Memphis, Tennessee ("Memphis"), and Zellner Construction Services, LLC, ("Zellner") and states as follows:

## PARTIES

1. Plaintiff Illinois Central is an Illinois corporation with its principal place of business in the state of Illinois. Illinois Central is neither a resident nor citizen of the state of Tennessee.

2. Defendant Memphis is a municipal entity located in Shelby County, Tennessee, and can be served with process through its city attorney, Jennifer A. Sink, 125 N. Main St., Room 336, Memphis, TN 38103 and/or its Mayor, Jim Strickland, City Hall, 125 N. Main St., Room 700, Memphis, TN 38103.

3. Defendant Zellner is a Tennessee limited liability company located in Shelby County, Tennessee, and can be served with process on its registered agent Mark J. Zellner at 2926 Ridgeway Rd., Memphis, Tennessee 38115-2755.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between the Plaintiff and Defendants, and the amount in controversy exceeds the sum of $75,000 exclusive of interest, costs, and expenses.

5. This Court also has subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 as Illinois Central's claims under 42 U.S.C. § 1983 arise under federal law. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims alleged herein because they arise from a common nucleus of operative facts.

## VENUE

6. The acts and omission described herein all occurred in Memphis, Shelby County, Tennessee. Consequently, venue is appropriate in this judicial district

## FACTS

7. At all pertinent times, Illinois Central's has owned property within the City of Memphis and Shelby County, on which it operates its mainline railroad tracks. This property is commonly referred to as Illinois Central's right-of-way and generally includes the tracks (including rails, crossties, and appurtenances) and roadbed. The roadbed is the support structure for the track, which is generally constructed of ballast designed to support and provide adequate drainage for the tracks.

8. Illinois Central's right-of-way and mainline tracks run generally north and south through the east side of Memphis. On average, approximately 18 freight trains per day pass through Memphis on this line, some of which carry hazardous materials.

9. Illinois Central maintains its track in compliance with regulations of the Federal Railroad Administration (FRA) including the FRA Track Safety Standards found in 49 C.F.R. Part 213.

10. Defendant Memphis owns and maintains property located at 3448 W Range Hills Dr., Memphis, Tennessee 38127 (referred to herein as "the City Property"). The City Property is bordered on the north by Frayser Boulevard and on the east by Illinois Central's right-of-way at or near Illinois Central's milepost 384.2.

11. For many years, the slope and contours of and vegetation on the City Property were such that runoff from rainfall did not damage Illinois Central's property or significantly interfere with its operations.

12. In or about the Spring of 2021, Defendant began construction of a Drain Maintenance and Heavy Equipment facility on the City property ("the City Construction Project"). As explained below, the City Construction Project dramatically altered the landscape and flow of surface water from the City Property to Illinois Central right-of-way causing significant damage to Illinois Central's property and interfering with its operations.

13. The City contracted with Defendant Zellner to design, oversee, and construct the City Construction Project.

14. In or about February of 2022, Illinois Central discovered a substantial increase in water, silt, and mud infiltrating Illinois Central's tracks and roadbed immediately east of the City Property. Upon investigation, Illinois Central discovered significantly increased erosion, leading from the City's property down the west embankment toward Illinois Central's tracks and roadbed. Further investigation revealed the source of the increased erosion and siltation on to Illinois Central

property was discharge of from a detention pond constructed by Defendants as part of the City Construction Project.

15.  As part of the City Construction Project, Defendants under color of state law intentionally caused the natural topography of the land to be altered and trees and vegetation on the City Property to be removed without employing necessary and sufficient protections to avoid damage to Illinois Central's property. This construction project also included installation of paved parking areas, concrete, and other impervious surfaces, which further increased and accelerated runoff.

16.  In addition, Defendants under color of state law intentionally constructed a detention pond that collects runoff from rainfall, redirecting it into a small existing ditch that runs toward Illinois Central's right-of-way.  Although this small ditch was capable of handling runoff prior to the City Construction Project, it is incapable of properly handling the increased and/or concentrated runoff caused by Defendants' construction activities.

17.  Defendants' acts also under color of state law intentionally diverted flow away from the original diversion swales located on top of the embankment on the west side of Illinois Central's property, and effectively created a water fall that eroded and scoured out the existing ditch. Together, these acts have caused and/or increased erosion, flooding and siltation of Illinois Central's right-of-way, roadbed, and tracks.

18.  The City Construction Project is incomplete and ongoing.

19.  Defendants' acts and omissions proximately caused damage to Illinois Central and are currently damaging and threaten to further damage Illinois Central's track and roadbed.

20.  Illinois Central has suffered damage resulting from Defendants acts and omissions including, but not limited to, damage to its property, increased track inspections, and track

maintenance and repair work to ameliorate the harm caused by Defendants. Illinois Central anticipates that the frequency and cost of such track maintenance and repair work will continue until Defendants take appropriate action to remedy these problems.

21. As a direct result of the City Construction Project and Defendants' acts and omissions, Illinois Central also has been required to issue slow orders, slowing the speed of trains in the area, causing an increase in expenses and decrease in profits.

22. Defendants' acts and omissions have resulted and will result in a continuing physical invasion of Illinois Central's property, which seriously interferes with Illinois Central's beneficial use and enjoyment of its property rights and diminishes the value thereof.

23. The City Construction Project and Defendants' acts and omissions have created a substantial risk of compromise to Illinois Central's tracks and roadbed and potential accidents, such as a derailment, with potential for further harm to Illinois Central, local residents, and/or third parties. It is imperative that the City take prompt action to remedy the damage to Illinois Central's property caused by the construction of the City's new facility.

## CLAIMS ALLEGED AGAINST DEFENDANTS

### COUNT ONE
**(Claim Against Defendant Memphis for Unconstitutional Taking under the Fifth and Fourteenth Amendments of the United States Constitution)**

24. Plaintiff re-alleges and incorporates by reference herein the allegations contained in preceding paragraphs.

25. Illinois Central owns a property interest in its real property and right of way adjacent to the property owned by Defendant Memphis.

26. Defendant Memphis's actions were under color of state law and pursuant to an affirmative official policy decision to redirect the natural flow of water from the City to Property

5

to Illinois Central's property, which has proximately caused damage to Illinois Central. These actions of Defendant Memphis include, but are not limited to, the decision to approve the construction plans and design redirecting the natural flow of water that has caused harm to Illinois Central.

27. Defendant Memphis's actions under color of state law seriously interferes with Illinois Central's beneficial use and enjoyment of its property rights and diminishes the value thereof and, thus, constitutes a taking of Illinois Central's property.

28. Defendant Memphis has failed to provide just compensation to Illinois Central for the invasion and taking of its property in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

29. Defendant Memphis's actions under color of state law deprived and continues to deprive Illinois Central of rights, privileges, or immunities secured by the United States Constitution.

30. Defendant Memphis is therefore liable to Illinois Central directly under the Fifth Amendment, as well as under 42 U.S.C. § 1983, for injunctive relief, damages, and compensation in amount to be determined by the trier of fact.

31. Illinois Central is entitled to an award of the attorneys' fees and litigation expenses pursuant to 42 U.S.C. §1988.

**COUNT TWO**
**(Claim Against Defendant Memphis for State Law Inverse Condemnation)**

32. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

33. The Tennessee Constitution states in part that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." TENN. CONST. ART. I, § 21.

34. Defendant Memphis's intentional, unauthorized, and continued diversion of water runoff, silt, trash, and debris on to Illinois Central's property interferes with Illinois Central's beneficial, common and/or necessary use and enjoyment of its property without just compensation in violation of TENN. CONST. ART. I, § 21.

35. Pursuant to TENN. CODE ANN. § 29-16-123 and related statutes, Defendant Memphis is liable for damages suffered by Illinois Central due to Defendant Memphis's inverse condemnation of Illinois Central's property and to injunctive relief to remedy further harm to Illinois Central.

**COUNT THREE**
**(Nuisance Claims Against Defendants)**

36. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

37. Defendants' acts and omissions constitute a nuisance in that they have created a dangerous condition that subjects the public to the risk of severe harm and disturbs Illinois Central's free use, enjoyment, and occupancy of its property and/or rendered its ordinary use or physical occupation uncomfortable.

38. Defendants' invasion of and interference with Plaintiff's property is substantial, unreasonable, offensive, and inconvenient to an ordinary person and amounts to a nuisance.

7

39. The nuisance created by Defendants has caused and continues to cause Illinois Central harm including damage to land, increased inspection and maintenance costs, repair costs, lost profits, and other damages to be shown at trial.

## COUNT FIVE
### (Negligence)

40. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

41. Defendants negligently failed to comply with the standards of care, including state and local statutes, regulations, ordinances, rules and standards, required of them in the design and construction of the City Construction Project.

42. Defendants failed to exercise reasonable care to avoid harm to Illinois Central while designing and constructing the City Construction Project.

43. Defendants' negligence proximately caused and continues to cause damage to Illinois Central's property.

44. Illinois Central is entitled to injunctive relief to remedy the harm caused by Defendants' negligence and to recover damages resulting from Defendants' negligence.

## COUNT SIX
### (Trespass Claim Against Defendant Zellner)

45. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

46. Defendant Zellner committed a trespass on Illinois Central's land by intentionally entering its property, changing the natural flow of water on and from the City Property, and otherwise releasing water, debris, silt, and trash onto Illinois Central's property without consent.

47. Defendant Zellner's trespass on Illinois Central's land has caused Illinois Central harm including damage to land, increased inspection and maintenance costs, repair costs, lost profits, and other damages to be shown at trial.

48. Defendant's trespass on Illinois Central's property is continuing and ongoing.

49. Illinois Central is entitled to recover damages from Defendant Zellner for the harm caused by its trespass on Illinois Central's property.

50. Illinois Central does not assert claims for intentional trespass against Defendant Memphis.

## **DAMAGES**

51. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

52. Illinois Central is entitled to damages from Defendants including, but not limited to, the following:

   A. damage to property;

   B. cost of repair;

   C. diminution in value;

   D. lost profits;

   E. train delay, disruption and inconvenience;

   F. incidental and consequential damages;

   G. other damages to be shown at trial.

**INJUNCTIVE RELIEF**

53. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

54. Illinois Central is substantially likely to succeed on the merits of the claims alleged herein.

55. Defendants' actions have and/or will irreparably harm Illinois Central. Without a preliminary injunction. Defendant's alteration of the natural flow of water and disposal of water runoff, silt, trash, and debris onto Plaintiff's property will continue to damage Plaintiff's property. This in turn creates an imminent threat of compromise of the structural integrity of Plaintiff's tracks and roadbed, mainline railroad tracks and related instrumentalities with the risk of catastrophic derailment, loss of life, personal injury and/or an environmental harm that cannot be undone.

56. Remedies available at law, such as monetary damages, are inadequate to compensate Illinois Central for the injury it has suffered and will continue to suffer. Unless Defendant's unlawful acts are stopped, the dangerous condition will continue and worsen.

57. A remedy in equity is warranted because the hardship Plaintiff faces without an injunction outweighs the hardship Defendants face. No considerable hardship will be imposed on Defendants by an injunction. At most, a preliminary injunction requires Defendant stop the unnatural flow of, water, debris, silt, and trash onto Plaintiff's property. On the other hand, if the Court does not enjoin Defendants' intentional conduct, Plaintiff's tracks and related instrumentalities will continue to suffer damage and thereby expose the public to the risk of a catastrophic derailment, loss of life, personal injury and/or an environmental disaster.

58. Issuance of a preliminary and permanent injunction will not cause substantial harm to others. At most, a preliminary injunction requires Defendant stop the unnatural flow of, water, debris, silt, and trash onto Plaintiff's property. The public interest would be served by an injunction as it will eliminate the risk of a catastrophic derailment, loss of life, personal injury, and/or an environmental disaster.

59. The allegations herein raise questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.

## ABATEMENT

60. Plaintiff re-alleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

61. Pursuant to TENN. CODE ANN. § 29-3-114, "in all suits brought for the recovery of damages resulting from any nuisance, and the finding that the matter complained of is a nuisance, the court exercising a sound discretion may immediately, upon petition of plaintiff, order or decline to order the nuisance to be abated."

62. Illinois Central is therefore entitled to an order requiring Defendants requiring them to abate the nuisance created by their acts and omissions alleged herein.

## RESERVATION OF ADDITIONAL CLAIMS

63. Illinois Central reserves the right to amend this complaint to assert additional claims including, but not limited to, claims for damages against Defendant Memphis under the Tennessee Governmental Tort Liability Act, TENN. CODE ANN. § 29-20-101, *et seq.* ("GLTA"), of which Illinois Central has given notice to Defendant Memphis.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Illinois Central Railroad respectfully requests the Court to enter final judgment in Illinois Central's favor, granting all relief requested herein including damages in amount determined by the jury, a preliminary and permanent injunction prohibiting Defendants from continuing their unlawful and tortious acts and omissions, an order requiring Defendants to abate their nuisance, court costs, post-judgment interest, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other relief as the Court deems just and appropriate.

THIS the 7th day of July, 2022.

Respectfully submitted,

ILLINOIS CENTRAL RAILROAD COMPANY

By:   /s/ D. Jason Childress
D. JASON CHILDRESS (BPR No. 035536)

**OF COUNSEL:**

GEORGE H. RITTER, ESQ., MSB # 5372
**WISE, CARTER, CHILD & CARAWAY, P.A.**
Post Office Box 651
Jackson, Mississippi 39205
Telephone: (601) 968-5500
Facsimile: (601) 944-7738
djc@wisecarter.com
ghr@wisecarter.com